VERNON A. NELSON, JR., ESQ.
Nevada Bar No.: 6434
THE LAW OFFICE OF VERNON NELSON
9480 S. Eastern Avenue, Suite 252
Las Vegas, Nevada 89123
Tel.: 702-476-2500
Fax.: 702-476-2788
Email: vnelson@nelsonlawfirmlv.com
*Attorney for Kendra M. Carrington*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KENDRA M. CARRINGTON | Case No.:        2:17-cv-00038-KJD-NJK |
| Plaintiff, | |
| v. | **PLAINTIFFS OPPOSITION TO** |
| SANTANDER CONSUMER U.S.A, INC., and EXPERIAN INFORMATION SOLUTIONS, INC., | **DEFENDANT SANTANDER CONSUMER USA INC.'S MOTION TO DISMISS** |
| Defendants. | |

COMES NOW, Plaintiff Kendra Carrington, through her attorney of record VERNON A. NELSON, JR., ESQ. of the LAW OFFICE OF VERNON A NELSON, and sets forth her Opposition to Defendant's Motion to Dismiss in the above referenced matter, for and upon the declaration of undisputed facts, affidavit and authorities set forth herein.

## I. INTRODUCTION

This matter arises out of a car loan that Plaintiff, and her husband, obtained from Defendant Santander Consumer U.S.A. INC., [1] ("Santander") in 2010. *See Exhibit A  to Defendants Motion for Summary Judgment (hereinafter "Defendant's Exhibit")).* In August 2014, Plaintiff refinanced the car

---

[1] It is undisputed that Santander is a Data Furnisher as defined by the FCRA.

THE LAW OFFICE OF VERNON NELSON
ATTORNEY AT LAW

loan and paid the loan in full. *Id.* Santander received full payment on August 6, 2014. *See Defendant's Exhibit D.*

The evidence in this case shows Santander received full payment on August 6, 2014. *See Declarations of Kendra Plaintiff ("DKC") at pp. 1-9 and Harry Jacobs ("DHJ") at pp. 1-9 (Exhibit 1 and Exhibit 2)(the Declarations also authenticate many of the attached Exhibits.) See also, Exhibit 28 to Simmon Dep. (defined below).* Yet, Santander intentionally continued to report inaccurate information about the account to the credit bureaus from August 14, 2014 until February 15, 2017. *Id.* Moreover, Santander reported inaccurate information about Plaintiff's account after receiving multiple disputes from credit bureaus about its inaccurate reporting of Plaintiff's account. *Id.* Plaintiff suffered damages because of Santander's actions. *DKC at pp. 1-9.* Accordingly, Santander's motion must be denied.

## II. STATEMENT OF FACTS

### A. Facts Relating to Plaintiff's Cause of Action Under 15 U.S. Code § 1681s–2(b)

On August 5, 2014 Plaintiff sent a letter to Experian Information Solutions addressing several concerns about inaccurate information showing on her credit report. *See Defendant's Exhibit B and Exhibit 13 to Deposition of Anna Simmons ("Simmons Dep") and Exhibits thereto attached as Exhibit 3 hereto.* The August 5, 2014 letter specifically referenced Santander Account Number 300001569409XXXX (the "Santander Account"). *Id. at p. 3.* First, the letter stated the reporting was inaccurate because Santander reported inaccurate dates; the account balance was not accurate; and was being reported incorrectly ("Plaintiff's Initial Disputes"). *Id.* Plaintiff claimed she was never late during the months shown on her credit report. *Id.* She stated the number of late payments reported by Santander were inaccurate. *Id.* Finally, Plaintiff claimed she was never 30 days delinquent on the Santander Account. *Id.*

Notably, in Plaintiff's Initial Disputes, she did not claim Santander inaccurately reported the account as "Open." *Id.* Likewise, Plaintiff did not claim Santander inaccurately reported there was a balance of $10,355.00 on the account. *Id.* There are two reasons why Plaintiff did not file disputes about (1) the account reporting as "Open," and/or (2) the inaccurate reporting of a balance of $10,355.00. First, Plaintiff's Initial Disputes were based on disputes arising out of her July 25, 2014 credit report. *DKC at pp. 1-9 and DHJ at pp. 1-9. See also Exhibit 11 to Simmons Dep.* Further, at the time Plaintiff made her Initial Disputes she had not paid off the Santander Account. *Id.* She did not pay off the Santander Account until August 6, 2014. *See Exhibit 28 to Simmons Dep. at XPN Carrington 000360. See also Deposition of Mary Delatorre ("DMD") and Exhibits thereto attached as Exhibit 4 hereto at p 39.*

Further, as of August 8, 2014, Santander had not inaccurately reported the Santander Account as "Open" and it had not reported a balance of $10,355.00.  *Exhibit 28 to Simmons Dep at XPN-Carrington 000360.* Exhibit 28 is D/R Log Report and a "disclosure log" maintained by Experian. *Id. at pp. 111-115.* The D/R Log report shows Santander accurately reported the accout as paid and closed as of August 10, 2014. *DHJ at pp 1-9.* The D/R Log Report shows the "condition" as PAID(2). *Id.* The term "PAID(2)" means *Paid account/Zero Balance. Id.* Finally, the D/R Log Report shows that Experian sent an electronic Automated Credit Dispute Verification ("ACDV") to Santander on August 14, 2014.[2] *DHJ at pp. 1-9.* The D/R Log report also shows Experian sent other contradictory and confusing reports on August 14 and 15. [3]

---

[2] ACDVs are initiated by credit reporting agencies when consumers dispute inaccurate information on their credit report. *Id.* The credit reporting agencies electronically route information about the dispute to the appropriate Data Furnishers. The Data Furnishers must respond to the ACDV and return it to the initiating credit reporting agency with updated information (if any) relating to the consumer's credit history. If an account is modified or deleted, carbon copies are sent to each credit reporting agency with whom the Data Furnisher has a reporting relationship.

[3] On August 14, 2014, Experian also sent Plaintiff report number 3197 – 0096 – XX. Experian indicated it was responding to Plaintiff's request the verify items on her personal credit report. *See Exhibit 14 to Simmons Dep.* The report confusingly stated that Experian had already investigated this information and the credit grantor had verified its

On August 21, 2014, Santander responded to the ACDV. *Exhibit 25 to Simmons Dep. and Exhibit 8 to Delatorre Dep.* In the column entitled *ON PROFILE* the ACDV indicated Santander had previously reported the *Account Condition* was paid and the account was 30 days late three times. *DHJ at pp. 1-9.* It also indicated the balance on the account was zero as of August 10, 2014. *DHJ at pp. 1-9.* The ACDV also indicated the account was closed on August 6, 2014. *Id.* Thus, the information Santander had previously reported, and which was *ON PROFILE* was largely accurate.[4] Despite the fact the ACDV was largely accurate as of August 10, 2014, Santander reported inaccurate information in response to the ACDV. *Id.* In the column *SUBSCRIBER RESPONSE*, Santander inaccurately failed to identify the *Account Condition* as paid. *Id.* Santander inaccurately reported the *ACCOUNT STATUS/RATING* as a code 11. *Id.* Code 11 means that the account is current. *Id.* The report also indicated that a balance of $10,055 was outstanding as of July 31, 2014. *Id.* Santander also inaccurately reported that the current monthly payment was $525 per month. *Id.* Santander also inaccurately indicated the date of the last payment was July 1, 2014. *Id.* Plaintiff did not discover that Santander had inaccurately responded to the ACDV ("Santander's Inaccurate ACDV Response") until Experian produced a copy of the ACDV in its Initial Disclosures (XPN-Carrington 000328).

On August 29, 2014, Experian sent Plaintiff Report No. 3197 – 0096 – XX. *See Exhibit 16 to Simmons Dep.* Contrary to its prior correspondence regarding the same report number, the August 29th report indicated that information about the Santander account had been updated. *Id. at p. 1.* However, the report did not indicate whether the account was still "Open;" or whether there was an open balance on the account. *Id. at p. 13.* The report only indicated there was a balance of $10,355.00 as of July

---

(cont.)

accuracy. *Id.* Experian further stated that pursuant to Section 611(a)(3)(A) of the FCRA, it would not be investigating Plaintiff's dispute again at this time. *Id.* On August 15, 2014, Experian sent Plaintiff Report number 2658-9668-XX. *See Exhibit 15 to Simmons Dep.* The August 15th Report confusingly stated Plaintiff's dispute was still pending with a projected completion date of September 6, 2014. *Id.*

[4] The ON PROFILE information did not reflect Plaintiff's Initial Disputes. *Exhibit 25 to Simmons Dep.*

2014. *Id.* Thus, Plaintiff still had no knowledge of Santander's Inaccurate ACDV Response. *DKC at pp.1-9.*

In response to Experian's August 14th letter, Plaintiff sent a another letter to Experian on September 10, 2014. *See Exhibit 5.* The letter raised questions about the adequacy of Experian's invesitgation. Since Plaintiff had not yet learned of Santander's Inaccurate ACDV Response, the September 10th letter related only to Plaintiffs Initial Disputes. *DKC at pp. 1-9.*

On September 16, 2014, Experian sent the Plaintiff Report number 1722 − 5159 − XX. *Exhibit 17 to Simmons Dep.* This report indicated that Experian was responding to Plaintiff's request to verify items on her personal credit report. *Id.* Again, Experian confusingly stated that it had already investigated this information and the credit grantor had verified its accuracy. *Id.*

On October 20, 2014, Plaintiff sent another letter to Experian requesting that Experian supply information on how Experian verified the information about the Santander Account. *(See Exhibit 6).* Plaintiff did not receive a response to this letter. *DKC at pp. 1-9 and DHJ pp. 1-9.*

On December 1, 2014 Plaintiff wrote another letter to Experian. *See Exhibit 7.* She stated the Santander Account was closed and that her credit report should state the account was closed. *Id.* Plaintiff did not receive a response to this letter. *DKC at pp. 1-9 and DHJ pp. 1-9.* Thus, it is clear that as of December 1, 2014, Plaintiff had no knowledge of Santander's Inaccurate ACDV Response. *DKC at pp.1-9.*

On February 5, 2015 Plaintiff sent a another letter to Experian. *See Exhibit 8.* Again, she claimed she closed the Santander Account and the account should reflect the Santander Account was closed. *Id.* Although Plaintiff asserted the Santander Account should reflect that it was closed, Plaintiff's assertion was not related to Santander's Inaccurate ACDV Response. Plaintiff still had no knowledge of Santander's Inaccurate ACDV Response. *DKC at pp. 1-9.*

On March 31, 2015 Plaintiff sent a letter to Experian stating Santander's reporting was inaccurate.  *See Defendant's Exhibit B.*  She specifically stated, ***This account has been CLOSED with a ZERO balance. Id.*  Her statement was not related to Santander's Inaccurate ACDV Response. She did not know of Santander's Inaccurate ACDV Response. *DKC at pp. 1-9.*

On September 30, 2015, Experian prepared a credit report for the Plaintiff, which it identified as Report number 1478 – 2624 – XX. *See Exhibit 12 to Simmons Dep*. Plaintiff believed this report was sent in response to her most recent letter of March 31, 2015 because the report stated it was provided in response to Plaintiffs "recent request." *Id. at p. 3*. This report showed Santander continued to report inaccurate information about the Santander Account *(See e.g. 30 day late payments in May, June, and July of 2013)*. *Id at page 15*. Thus, this report did not provide Plaintiff with knowledge of Santander's Inaccurate ACDV Response.

On February 15, 2016, Plaintiff sent a letter to Experian claiming certain furnishers continued to report incorrect information. *DKC at pp. 1-9, DHJ pp. 1-9, Exhibit 28 to Simmons Dep. at p. 1 (confirming that Experian received a dispute letter from Plaintiff with the "entry date" of February 19, 2016).* On February 19th, Experian responded to Plaintiff with Report number 0948-8438-XX. *Exhibit 22 to Simmons Dep.* The report stated Experian reviewed the documentation provided by Plaintiff, but determined they could not use it to change or delete information. *Id. at p. 1.*[5] Experian stated it would contact the furnisher of the information. *Id.* Plaintiff presumed Experian was going to contact Santander. *DKC at pp. 1-9 and DHJ pp. 1-9.*   Experian said when it completed its investigation, it would send Plaintiff the results. *Exhibit 22 to Simmons Dep. at p. 1.* She presumed Experian would report the results of its investigation of the Santander dispute. *DKC at pp. 1-9 and*

---

[5] Ms. Simmons acknowledged that Exhibit 22 did not identify the furnishers to which the dispute/investigation related. She confirmed that the same type of letter could be sent if there was a dispute about more than one item. She admitted that she could not tell from Exhibit 22 to which furnisher(s) the dispute(s) related. Thus, the letter could have included a dispute about Santander and Experian could have contacted Santander about the report in February and/or March of 2016.

*DHJ pp. 1-9.* Experian provided Plaintiff with Report # 0948-8438-XX on March 13, 2016. *Exhibit 23 to Simmons Dep.* This report showed Santander reported inaccurate information about the account. *Id. at p. 9.* Clearly, Plaintiff's February 15th letter and Experian's February 19th letter did not involve Santander's Inaccurate ACDV Response and Plaintiff did not know of Santander's inaccurate response. *DKC at pp. 1-9.*

Plaintiff obtained a copy of her credit report on July 26, 2016. *See Exhibit 9.* The report showed Santander inaccurately reported to Experian: (1) the balance on the Santander Account was $10,355.00; (2) the account was "open," and (3) the payment status was "Current, was past due 30 days three times." *Id. at p.14.* This was the first time Plaintiff received notice that Santander inaccurately reported to Experian the Santander Account was: (1) "Open," (2) the balance was $10,355.00, and (3) the currently monthly payments were $525.00 per month.

Further, the same credit report showed Santander was reporting different information to Equifax. *Id.* Santander was inaccurately reporting the Santander Account as "Open;" but it had a $0.00 balance. *Id.* Contrary to Experian, Santander reported the payment status as "Pays account as agreed" to Equifax. *Id.* This report also showed Santander was reporting different information to Transunion. *Id. at p. 23.* Transunion showed Santander reported the account as "Closed" with a $0.00 balance; and the payment status as "Paid or paying as agreed." *Id.*

Before September 19, 2016, Plaintiff successfully submitted an on-line dispute with Experian. *See Exhibit 10 and DKC at pp. 1-9 and DHJ pp. 1-9.* Plaintiff requested the following statement be added to her credit report, *Payments were made in compliance with the negotiated schedule. See Exhibit 10.* Plaintiff was most concerned about these comments being added to her report because she still had not recognized the importance of the July 26th report and she still did not have knowledge of Santander's Inaccurate ACDV Response. *DKC at pp. 1-9.*

On September 19, 2016, Experian produced report number 4180 – 7889 – XX; which was received by Plaintiff.  *See Exhibit 11* (the same report was identified as *Exhibit 5 to Simmons Dep.*). Ms. Simmons admitted that she did not recall seeing the document prior to her deposition.  *Id. at p. 40.* The September 19, 2016 report showed Santander continued to inaccurately report the account the status of the account was "Open" *See Exhibit 11 at pp. at CarringtonPLT 000034-35.* This report indicated, for the first time, the Santander Account was in dispute. *Id.*

On November 7, 2016 Plaintiff obtained a copy of her credit report. *See Exhibit 12.* The report shows Santander continued reporting inaccurate information to Experian. *Id. at p. 16.* For example, Santander continued to report $10,355 was due on the Santander Account, and the account was still "Open". *Id.*  However, this report did contain Plaintiff's statement, *PAYMENTS WERE MADE IN COMPLIANCE WITH THE NEGOTIATED SCHEDULE. Id.*

The report also showed Santander continued reporting different information to Equifax and Trans Union. *Id.* As to Equifax, Santander correctly reported a balance of $0.00. *Id.* Yet, Santander inaccurately reported to Equifax the account was still open. *Id.* As to Trans Union, the report showed Santander correctly reported the balance was $0.00, the account was closed, and Plaintiff had "paid or was paying as agreed." *Id. at p. 24.* Santander's reporting to Trans Union clearly proves Santander knew the correct status of Plainitff's Santander Account; but Santander knowingly continued to report negative and inaccurate information to Experian and Equifax. *DHJ at pp 1-9.* Finally, the Plaintiff did not recognize the import of the November 7th report and she still did not have knowledge of Santander's Inaccurate ACDV Response. *DKC at pp. 1-9.*

On January 5, 2017 the Plaintiff filed the complaint in this action against Santander and Experian for the continued inaccurate reporting of the Santander account to Experian[6]. *Docket #1.* The

---

[6] At the time of the filing, Plaintiff believed Experian was liable for violations of the FCRA. However, Plaintiff has settled with Experian and Experian is no longer a party to action.

complaint alleges Santander and Experian violated the FCRA and NRS Chapter 598.  Santander filed

its Answer on January 13th. *Docket # 4.* Experian filed its answer on January 31st. *Docket #8.* A

Scheduling order was filed on February 17, 2017. *Docket # 11.* The parties then made their Initial

Disclosures and commenced discovery. The parties also entered a stipulated protective order on April

5, 2017. *Docket #11.*

During discovery, Experian produced an credit report dated February 15, 2017. *Exhibit 24 to*

*Simmons Dep.*  On page 3 of the report, Experian states the report was provided in response to

Plaintiff's recent request. *Id.* In this report, Santander appears to have corrected some items it had

inaccurately reported. Importantly, the report states the Santander Account information was updated

from Experian's processing of Plaintiff's dispute in 2016. *Id. at p. 7.* Experian could not added that

comment unless it communicated with Santander about the dispute. *DHJ at pp. 1-9.*

The report still contains inaccurate information. Santander still inaccurately reports Plaintiff's

payments were 30 days late in May, June, and July of 2012. It also inaccurately reports the account

was closed in September 2014. *Id. at p. 7.*  The ACDV sent by Experian to Santander indicated

Santander previously reported the account was closed in August of 2014. *Exhibit 25.* This information

was inaccurately changed when Santander sent Santander's Inaccurate ACDV Response on August

21, 2014. *Id.*

Yet, the reporting is improved in some respects. First, a recent balance is no longer reported.

*Id.* The status is reported as PAID, CLOSED. A new comment states *Account information disputed by*

*consumer (Meets requirement of the Fair Credit Reporting Act). Id.*  The report also contains a section

entitled *Your statement.* This section includes the statement

"PAYMENTS WERE MADE IN COMPLIANCE WITH THE NEGOTIATED SCHEDULE."

Given the foregoing, Plaintiff submits the evidence in this case shows Santander violated

Section 1681s-2(b) and Plaintiff filed her complaint within the time periods provided for in Section 1681p. These contentions are thoroughly addressed in the legal argument below.

**B. Santander Knowingly/Recklessly Disregarded Its Duties to Correct and Update Information and Plaintiff is entitled to recover damages under 15 U.S.C. § 1681n.**

The FCRA provides an affected consumer is entitled "actual damages" for a negligent violation. *15 U.S.C. § 1681o.* If the violation is willfull, a consumer may recover statutory damages, punitive damages, and attorney's fees and costs. *15 U.S.C. § 1681n.* Plaintiff respectfully submits the evidence in this case shows Santander knowingly/recklessly disregarded its duty to correct/update information under § 1681s-2(a)(2). Thus it is clear Santander violated the FCRA when it provided Santander's Inaccurate ACDV Response to Experian. The evidence also shows Santander knowingly or recklessly failed to correct and update information.

When Santander sent Santander's Inaccurate ACDV Response to Experian, it was obligated to report the same information to Equifax and Transunion and it did so. However, once it did so, it set off a flurry of "Carbon Copy" requests from Equifax and Trans Union. Ms. Simmons testified in great detail about this flurry of requests. *Simmons Dep. at pp. 103-110.*

Ms. Simmons testified that Experian maintains "Carbon Copy" requests on transaction logs. *Id.* She explained the carbon copy is what is received to a credit reporting agency from a data furnisher if they have completed an investigation initiated from one of the other two credit reporting agencies. *Id.* She also stated carbon copy is what is received to a credit reporting agency that is sent by a data furnisher in response to a dispute they have received from one of the other two credit-reporting agencies. *Id.* EFX stands for Equifax and TUN for TransUnion. *Id.* Ms. Simmons then explained Exhibit 26 (XPN-Carrington 000329-346) showed Equifax made a carbon copy request from Santander on August 26, 2014; which was just a few days after Santander's Inaccurate ACDV Response. *Id.* She said Equifax wanted to verify it should report Plaintiff's Santander Account as "Paid." *Id.* Santander inaccurately responded the reporting was incorrect and Plaintiff's Santander

Account should have reported as a "current account." *Id.* Because of Plaintiff's dispute to Experian, Santander ended up reporting incorrect information to Equifax as well. Plaintiff did not discover this until Ms. Simmons testified to it. *DKC at pp. 1-9.*

Ms. Simmons discussed XPN-Carrington 000332; a carbon copy request from Trans Union dated August 29, 2014. *Id.* Trans Union wanted to verify it was correctly reporting Plaintiff's account as a "current account" (as Santander had told Equifax). *Id.* However, instead of verifying Trans Union's reporting that Plaintiff's account was current, Santander suddenly changed its reporting. It told Trans Union Plaintiff's Account should be reported as "Paid," and not "Current." *Id.* When was asked if she knew why Santander told Equifax Plaintiff's Account was a "current account" on August 26th, and then, only three days later, on August 29th, it told TransUnion to report the opposite status, "paid;" Ms. Simmons could offer no explanation. Plaintiff did not know of reporting until Ms. Simmons deposition. *DKC at pp. 1-9.*

Ms. Simmons tesitified about a second "carbon copy" request made by Equifax, one month later, on September 26, 2014. *Id. referring to XPN-Carrington 000335-336.* She testified that Equifax was attempting to verify that it should be reporting the account as a "currrent account" and not a "closed account" as per Santander's response to Equifax's August 26th carbon copy request. *Id.* Alarmingly, in response to Equifax's request, Santander told Equifax that it should change its reporting back to "Paid." *Id.* Again, Plaintiff did not know about these inconsistent responses until Ms. Simmons testified about them at her deposition. *DKC at pp. 1-9.*

Ms. Simmons then testified about another request made by Trans Union on October 2nd. *Id. referring to XPN-Carrington 000338-339.* Trans Union was requesting Santander verify Plaintiff's Account as "Paid." This time, Trans Union verified Plaintiff's Account was paid. *Id.* Plaintiff did not know about this until Ms. Simmons testified at her deposition. *DKC at pp. 1-9.*

Ms. Simmons testified Equifax made another carbon copy request on November 7, 2014. Equifax requested Santander verify it should be reporting the Plaintiff's Account as "Paid." This time Santander verified the Plaintiff's account was paid. *Id.*   Plaintiff did not know about this request/response until Ms. Simmons testified about them at her deposition. *DKC at pp. 1-9.*

Ms. Simmons testified Trans Union made another Carbon Copy request on November 11, 2014. *Id.* referring to  XPN-Carrington 000344-45. Trans Union requested Santander verify Plaintiff's Account was "Paid" and Santander did verify it as "Paid." Plaintiff did not know about this request/response until Ms. Simmons testified about them. *DKC at pp. 1-9.*

Santander's records are consistent with Ms. Simmon's testimony. *DMD Exhibit 8* shows Santander's Inaccurate ACDV Response was sent to Experian on August 21, 2014 *Id. at p. 2.* Santander's records show it received at least 14 "AUTO DISPUTES" from Tran Union and Equifax after it sent Santander's Inaccurate ACDV Response to Experian. These AUTO DISPUTES were reported between August 25, 2014 and November 10, 2014. *Id. at pp. 1-2.*

It is clear Plaintiffs Account was "Paid," on August 6, 2014. Yet, Santander knowingly and/or recklessly failed to correct and update the information it had reported to Experian in Santander's Inaccurate ACDV Response. In fact, during her deposition, Ms. Delatorre was able to determine quickly that the information Experian was reporting was inaccurate. *DMD at pp. 22-30.* Ms. Delatorre was shown Plaintiff's credit reports from July 26, 2016, September 19, 2016, and November 7, 2016. *Id.* As to all three reports, Ms. Delatorre was able to conclude the information reported by Experian was incorrect, "Simply by looking at the information for both Experian and Equifax, you can see on the trade line for Equifax it appears that there's a zero balance, where the balance on Experian is showing $10,355.00." *Id. at pp. 23-24.* Plaintiff contends the evidence above shows Santander knowingly and/or recklessly reported Santander's Inaccurate ACDV Response; and that it knew, or should have known, by November 11, 2014 that the information it reported to Experian about

Plaintiff's Account was inaccurate. However, Santander never undertook any effort to notify Experian it provided inaccurate information in Santander's Inaccurate ACDV Response that required correction.

Ms. Simmon's testimony confirms that Experian had to rely on Santander to carry out its duty to correct and update inaccurate information; and that Santander failed to do so. *Simmons Dep. at pp. 108-110.* She testified that "according to policy," Experian could not independently update/correct inaccurate information on the Plaintiff's credit report; even though Experian knew that Santander was reporting different information to Equifax and Trans Union. *Id.* She testified that since the data furnisher (Santander) owns the data; and since the data had just been verified in an ACDV response from the data furnisher (Santander), Experian was not permitted to update the Plaintiff's report from the carbon copies. *Id.* Experian was required to report the data that had just been verified in an ACDV response that the Plaintiff's account was not paid. *Id.* Thus, it is clear that Santander had the duty to provide complete and accurate information to Experian when it knew/should have known the information it reported to Experian was inaccurate.

It is also clear Santander ignored its duty to provide complete and accurate information to Experian; even though it knew/should have known it reported inaccurate information to Experian via Santander's Inaccurate ACDV Response. At her deposition, Ms. Delatorre testified that she was familiar with the Santander records identified Exhibit 8. DMD at pp. 30-32. She also testified, "Once an account closes, there's no longer any documentation on an account unless a dispute is received through the credit bureaus. But for this record we're showing the last dispute was received on November 10, 2014." *Id.* Ms. Delatorre also testified that an XB code was added to the Plaintiffs account on January 6, 2017, "due to this lawsuit." Ms. Delattore's testimony shows that Santander undertook no effort to correct inaccurate reporting to Experian after November 10, 2014 even though Santander knew/should have known the information it reported to Experian was inaccurate. Instead,

Santander closed the file after November 10, 2014 and left Plaintiff to fend for herself. Finally, on January 6, 2017, after Plaintiff filed this civil action, Santander added and XB code to the Plaintiff's Report; which indicates that Plaintiff disputed Santander's reporting. However, this addition was essentially meaningless because Experian had already added Plaintiff's Statement to her September 16, 2016 credit report. Noticeably, Ms. Delatorre did not testify that Santander also sent an "AUD" form to Experian on January 6, 2017.

On the other hand, Ms. Simmons did testify about an AUD form Experian received from Santander on January 6, 2017. *Simmons Dep. at p. 111 and Exhibit 27.* An AUD is an Automated Universal Data Form. *DHJ at pp. 1-9.* AUDs are initiated by Data Furnishers to request out-of-cycle credit history updates. *Id.* The AUD process provides Data Furnishers with a means to report a correction to a consumer's file, to the credit bureaus, outside of the regular activity reporting cycle process. *Id.* Due to number of Carbon Copy requests made by Equifax and Trans Union, Santander knew/should have known Santander's Inaccurate ACDV Response had to be corrected. *Id.* Santander could have, and should have, sent an AUD form to Experian between August and November of 2014 to correct Santander's Inaccurate ACDV Response and to comply with its duty under Section 1681s-2(a)(2) to correct and update information. *DHJ at pp. 1-9.*

Ms. Simmons testified that a transaction log dated January 6, 2017 showed that Santander sent an AUD on January 6th. *Simmons Dep. at p. 111.* By way of the AUD Santander updated Plaintiff's Account to show the Account Status as 13-PAID. *Id.* Code 13 means paid/zero balance. *DHJ at pp. 1-9.* The AUD was sent one-day after Plaintiff filed this action and was clearly prepared in great haste. The AUD incorrectly reports Plaintiffs account was paid and closed on August 1, 2014. *Exhibit 27 to Simmons Dep. at p.2.* The obvious question to Santander is why did it wait until Plaintiff filed suit to prepare and file the AUD in such a hasty manner and without investigating the Plaintiff's claims. Nothing had changed with respect to Plaintiff's account since 2014. Thus, why did

Santander fail to file the AUD in 2014 before closing the file and leaving Plaintiff with no recourse but to file suit. Plaintiff submits Santander should have to answer these questions in Court, and in the presence of a jury.

Based on the foregoing, Plaintiff respectfully submits the evidence in this case shows Santander knowingly or recklessly disregarded its duties under the FCRA; including its duty to correct and update information pursuant to Section 1681s-2(a)(2). Accordingly Plaintiff submits that she is entitled to recover her actual damages, and statutory damages, punitive damages, and attorney's fees and costs pursuant to *15 U.S.C. § 1681n.*

### C. The Plaintiff, Kendra Carrington suffered substantial economic damages, emotional distress damages, and damage to her credit reputation due to Santander's violation.

Although the Defendant did not address Plaintiff's damages in its opening brief, Plaintiff, out of an abundance of caution, given a pending FRCP Rule 56 Motion will briefly discuss evidence that shows Plainitiff suffered substantial actual damages due to Santander's violation.

At her Deposition, Plaintiff testified extensively about the types of damages she suffered due to Santander's violation. *See Deposition of Kendra Carrington (KC Dep.) and Exhibits thereto attached as Exhibit 13.* For example, at pp. 146 to 148, she testified she suffered monetary damages of approximately $400 per month due to a higher mortgage payment. *Id.* She testified Security National Mortgage told her interest had increased due to information on her credit report. *Id.* She said she paid higher interest on credit from Home Depot and Lowes. *Id.*

Plaintiff also testified extensively about the emeotional and physical damage she has suffered due to Santander's inaccurate reporting to Experian. *KC Dep. at pp. 150 to 168.* For example, she testified she suffered emotional distress when she was trying to get approved for a mortgage to buy her home. *Id.* She testified the litigation process has caused her to suffer stress. *Id.* She suffered emotional distress because her credit prevented her from getting a pool. *Id.* During the dispute process with Experian and Santander she suffered high blood pressure. *Id.* She had to meet with her medical

doctor about her high blood pressure. *Id.* She also identified witnesses who would testify as to her damages including her husband, her mother, Candis Wright, her sister, her son, Dr. Roth, and Amber Coleman. *Id. at 179 to 187.*

Plaintiff has also obtained a sworn statement from Amber Coleman of Security National Mortgage. *Exhibit 14.* Plaintiff intends to call Ms. Coleman as a witness at trial. In her statement Ms. Coleman stated that the inaccurate information provided to Experian affected Plaintiff's Credit Score. *Id.* The lower credit score resulted in Plaintiff having to pay more interest. *Id.*

Plaintiff has provided this brief description of her damages to demonstrate that she has significant admissible evidence to introduce at trial to prove her damages. Plaintiff has also provided numerous documents. However, since Santander did not address damages in it opening brief, Plaintiff respectfully requests the right to file a sur-reply if Santander's reply attempts to minimize Plaintiff's damages.

### D. Disputes with Facts Alleged in Defendant's Opening Brief

The evidence presented below shows that several "facts" alleged by Defendants are not supported by the evidence in this case. In some cases the so-called "facts"alleged by Defendants are wholly contrary to the evidence Defendants have cited in support of their so-called facts. ***ALSO, DEFENDANTS HAVE FAILED TO PROVIDE ANY EVIDENCE WHATSOEVER RELATING TO THE DATE PLAINTIFF DISCOVERED DEFENDANTS VIOLATION. ON THE OTHER HAND, PLAINTIFF HAS PRODUCED SUBSTANTIAL EVIDENCE THAT SHOWS PLAINTIFF DISCOVERED SANTANDER'S VIOLATION WITHIN THE TWO-YEAR LIMITATION PROVIDED FOR IN SECTION 1681P.***

#### 1. Several "Facts" Alleged By Defendants Are Not Supported By The Evidence and in Some Cases The So-Called "Facts"Alleged By Defendants Are Wholly Contrary To The Evidence Defendants Have Cited In Support of Such Facts.

On page 3 of its Opening Brief Santander alleges it reported the loan payoff to all the credit reporting agencies on August 31, 2014, showing the account had been paid in close with a zero balance. In support of this statement, Santander sites to the deposition testimony of Mary Delatorre at

page 39. Santander also claims this information was transmitted to all the credit reporting agencies, including Experian through third-party reporting service called Conduent. In support of this allegation Defendant cites to page 40 of Ms. Delatorre's deposition. However, Ms. Delatorre's testimony does not support these factual allegation. *DMD at pp. 39-40.* Her testimony clearly indicates she was describing the typical process that Santander follows. *Id.* In fact, Ms. Delatorre does not actually state she has any personal knowledge of what happened with Plaintiff's account. *Id.* She simply speculates that since the account was paid off on August 6, 2014, "it would have gone over in our transmission file on August 31, 2014 showing that the account had been paid in close with a zero balance." It is clear that Ms. Delatorre's testimony is purely speculation based on what she understands the be Santander's typical practice; and her testimony is not based on personal knowledge.

Moreover, Ms. Delatorre's speculative testimony is directly refuted by Santander's Inaccurate ACDV Response, which was filed on August 21st 2014. Ms. Delatorre's testimoney is also refuted by the multiple requests for courtesy copies made by Trans Union and Equifax and Santander's responses thereto. The multiple requests for courtesy copies began within a matter of days after Santander sent Experian Santander's Inaccurate ACDV Response.

Defendant also inaccurately implies Plaintiff's August 5, 2014 dispute related to Plaintiff's final payment on August 6, 2014. Plaintiff could not have possibly disputed anything about the final payment on August 5th;  because the final payment was not made until August 6th. Moreover, the disputes raised in Plaintiff's August 5th letter only relate to Plaintiff's Initial Disputes described in section 2 (A) above (the disputes related to the account balance and disputes about the number of late payments reported by Santander).

Defendant also claims that Santander initially reported the account was current, but promptly corrected its mistake three days later and reported the account as paid and closed. In support of this claim Defendant cites to the *Simmons Dep*. at pp. 108 – 109. Defendants cite to pages 108 and 109 of

the *Simmons Dep.* does not support Defendant's claim. Simmons testimony on pages 108 and 109 does not relate to Santander's erroneous reporting to Experian. Her testimony on these pages relates only to carbon copy requests made by Equifax and Trans Union. These requests were made after Defendant sent Santander's inaccurate ACDV response to Experian on August 21st. In fact on page 109, Ms. Simmons testified the ACDV that Santander provided to Experian did not report the account as paid.

Santander also inaccurately states that it has reported the account as paid and closed since August 2014. In support of this statement, Defendant loosely cites to Experian's Transaction Logs. The transaction logs cannot support a claim that Santander reported the account correctly to Experian. Ms. Simmons clearly testified the transaction logs only contain information about carbon copy requests made by Equifax and Trans Union. *Simmons Dep. at pp. 103 – 104.*

Santander also inaccurately claims Plaintiff has not disclosed any document or communication which would indicate a dispute was sent to Santander after the initial one in August 2014, and then a follow-up in November 2014. To the contrary, Plaintiff produced a copy of an online dispute filed with Experian prior to September 19, 2016.[7] Plaintiff also produced a copy of Experian Report dated September 19, 2016. This report indicated, for the first time, the Santander Account was in dispute. Plaintiff also produced a copy of her November 7, 2016 Experian credit report. This report contains a statement that payments were made in compliance with the negotiated schedule. The addition of this statement likely required communication between Experian and Santander. Plaintiff also produced a

---

[7] It should also be noted that Plaintiff has declared that she sent a dispute letter to Experian on February 15, 2016; which related to information reported by certain furnishers. Experian responded to this letter on February 19 and stated that they had reviewed the documentation provided by Plaintiff, but determined they could not use it to change or delete the information. Experian stated it would contact the furnisher of the information. Plaintiff's Declaration states that she presumed Experian was going to contact Santander and that it would send Plaintiff the results of its investigation. Ms. Simmons testified that she had not previously seen the February 19 report. She said she could not identify the furnishers to which the dispute/investigation related. She also confirmed this type of report could be sent if there was a dispute about more than one item. Thus it is possible, if not probable, that the February 19th report related to Santander and that Experian contacted Santander in response to the letter.

copy of an updated credit report dated February 15, 2017. This report shows significant changes were made to Santander reporting of the account. Importantly, the report states the Santander account information was updated from Experian's processing of Plaintiff's dispute in September 2016. Plaintiff contends Experian could not have added this statement without communicating with Santander. *DHJ at pp. 1-9.*

### 2. Defendant Fails to Allege Facts About the Date Plainitff Discovered the Violation.

Most importantly, Defendant does not make any factual allegations about Plaintiff's discovery of Santander's Inaccurate ACDV response.[8] The evidence set forth above shows Plaintiff did not discover information about Santander's inaccurate ACDV response until Ms. Simmons testified about it at her deposition. The evidence above also shows the earliest Plaintiff could have discovered information about Santander's inaccurate ACDV response was on July 26, 2016; when her credit report showed Santander inaccurately reported to information to Experian. The report also showed Santander had reported different and more accurate information to Equifax and Trans Union. Either way, the Plaintiff clearly filed her complaint within two years of her discovery of the violation that is the basis for Santander's liability; namely Santander's inaccurate ACDV response. As is described above, Plaintiff's Complaint was filed within the time limits set forth in Section 1681p and Defendant's Motion must be denied.

## III. LEGAL ARGUMENT

### A. Standard of Review[9]

---

[8] Perhaps that is because Santander itself has failed to discover that the ACDV response it sent to Experian was inaccurate and it addressed issues that had not been disputed by the Plaintiff.

[9] Although the introduction and headings indicate that Defendant's motion is also made pursuant to FRCP 12(c), the Defendants has not raised any argument under Rule 12(c). Nevertheless, Plaintiff notes that under Rule 12(c), when matters outside the pleadings are considered, the motions are treated as motions for summary judgment. *Abbatiello v. County of Kauai, 2007 U.S. Dist. LEXIS 8906(D. Haw. 2007).*

The Court should dismiss any cause of action that fails to state a claim upon which relief can be granted. FRCP 12(b)(6); *see also N Star Ina. v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983)*. In reviewing a motion to dismiss pursuant to 12(b)(6), the Court should take all allegations in the Complaint as true and construe them in the light most favorable to Plaintiffs. *Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)*, as amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001). The Court may, however, take judicial notice of documents from related litigation; and it may consider extrinsic evidence "not attached to the complaint if the document's authenticity is not contested and the plaintiffs complaint necessarily relies on it." *Johnson v. Fed. Home Loan Mortgage Corp., 793 F.3d 1005, 1007 (9th Cir. 2015)*. If the Court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 Motion for Summary Judgment, and it must give the nonmoving party an opportunity to respond. *United States v. Ritchie, 342 F.3d 903 (9th Cir. 2003)*. A motion under Rule 12(b)(6) must not be granted unless the court determines beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Rule 12(b)(6) motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *Advanced Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2004 U.S. Dist. LEXIS 19530 (N.D. Cal. 2004).

### B. The Fair Credit Reporting Act

In *Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100 (9th Cir. 2012)* the Ninth Circuit Court of Appeals reversed the District Court's decision granting summary judgment as to the Defendant Chase Bank's violations of the FCRA. In reversing the District Court decision, the Court of Appeals determined that the Plaintiff had sufficiently plead that he had notified Trans Union that Chase was reporting inaccurate information on his credit report *Id. at 1106*. The Court further found that Trans Union sufficiently notified Chase that it was reporting inaccurate information on Plaintiff's credit report and that this triggered Chase's obligations under § 1681s-2(b)(1) *Id. at 1107*. The Plaintiff

alleged that Chase "failed in its duties because: (1) its investigation in response to the TransUnion notification was deficient; (2) Chase continued to report the account as belonging to Drew, albeit as lost or stolen, instead of blocking it; and (3) Chase reported the thief s address as Drew's." *Id.* The Court of Appeals determined that Chase had conducted a reasonable investigation; but that there were "material issues of fact whether reporting that the fraudulent account was lost or stolen constituted 'incomplete' and 'inaccurate' reporting in violation of subparagraphs (D) and (E).

Similarly, in *Waldrop v. Green Tree Servicing, LLC, 2015 U.S. Dist. LEXIS 136301 (D. Nev. Oct. 5, 2015)*, Nevada District Court denied the Defendants motion to dismiss and determined that the Plaintiff had satisfied the requirements of FRCP 8(a)(2); *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).* The Court noted that FCRA applies to furnishers of information "and imposes a duty upon them to ... "investigate the accuracy of reported information upon receiving notice of a dispute, § 1681s-2(b)." (*citing Cisneros v. Trans Union, LLC, 293 F. Supp.2d 1167, 1174 (D. Ha. 2003).* The Court identified the elements a Plaintiff must allege to state a cause of action under 15 U.S.C. § 1681s-2(b):

> (1) plaintiff identified an inaccuracy in his/her credit report;
>
> (2) plaintiff notified a CRA;
>
> (3) the CRA notified the furnisher of the information; and,
>
> (4) the furnisher failed to investigate the inaccuracies and it willfully continued to inaccurately report the status of his account in violation of subparagraphs (D) and (E).

*Id. at \*7 - \*10.* The Court noted "[t]he 'pertinent question' in analyzing the adequacy of the furnisher's investigation, is 'whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.'" Id. at \*8 (*citing Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009).*

Like Defendant's arguments here, the Defendant Waldrop stated "that Plaintiffs [did] not allege the date on which they reported the...dispute to any CRA or what defendant wrongfully reported." *Id. at \*8-\*9*. The Court rejected this argument and stated:

> an FCRA claim does not need to be pled with specificity. The exact date need not be included. Plaintiffs do allege they communicated their dispute to Equifax, Experian, and TransUnion. Plaintiffs believe these credit reporting agencies subsequently notified defendant of the dispute. Plaintiffs not only allege "defendant failed to review all relevant information provided by the credit report agencies and/or conduct a reasonable investigation," but also that "defendant notified the credit reporting agencies the derogatory credit information reported was correct and failed to notify the credit reporting agencies that the account was disputed"

The Court ultimately determined that "Plaintiffs' complaint sufficiently alleged defendant furnished plaintiffs' information to one or more consumer reporting agencies and failed to comply with the requirements of the FCRA." *Id.* at 8. Thus, Defendant's motion to dismiss was denied. *Id.*

Like the Plaintiff in *Waldrop*, Plaintiff has alleged (1) that she identified an inaccuracy in her credit report; (2) she notified a CRA; (3) the CRA notified the furnisher of the information; and, (4) the furnisher failed to investigate the inaccuracies and that it willfully and falsely continued to inaccurate information about the Santander Account in violation of subparagraphs (D) and (E). (See Docket #1 at ¶ 12,  and ¶¶ 31-39). Finally, while Plaintiff's complaint does not specifically identify Section 1681s-2(b), she is not required to do so. *See Johnson v. City of Shelby, 135 S. Ct. 346, 347 (2014)(factual allegations sufficient to support a claim trump the need to cite the specific statute supporting the plaintiff's legal theory).* Based on the foregoing, CIT's motion to dismiss should be denied.

Finally, it is also important to note that Defendant has attached 5 Exhibits to its Motion to Dismiss and it relies on these Exhibits in support of its motion. Thus, Defendant contends that these Exhibits convert the 12(b)(6) motion into a Rule 56 Motion for Summary Judgment. *United States v. Ritchie, 342 F.3d 903 (9th Cir. 2003)*

### (C) Summary Judgment Standard

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to FRCP 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*   The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact and must support its assertion with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). AFTER the moving party has properly supported the motion, the burden shifts to the nonmoving party to prove specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the record cannot lead a reasonable trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

### (D) Plaintiff Filed Her Action Within Two Years After the Date She Discovered the Violation that is the Basis for Liability. Thus, Defendants Motion Must Be Denied.

The statute of limitations for violations of the FCRA is "2 years after the date of discovery [or constructive discovery] by the plaintiff of the violation that is the basis for liability." *Drew v. Equifax Info. Servs., LLC*, 690 F3d 1100, 1109 (9th Cir 2012), citing 15 USC § 1681p(1) and *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010).  The burden is on the Defendant to demonstrate that a reasonably diligent plaintiff would have discovered the facts constituting the violation.  *Drew, 690 F3d at 1110* .  The Defendant must show "how a reasonably

diligent plaintiff . . . would have discovered the violations." *Id. citing Strategic Diversity, Inc. v. Alchemix Corp., 666 F3d 1197, 1206 (9th Cir 2012).*

In *Vasquez-Estrada v. Collecto, Inc.*, 2015 U.S. Dist. LEXIS 142280 (D. Ore. 2015) the Court held that the Defendant failed to explain how a collection letter that Defendant recevied in February of 2012 should have caused a reasonably diligent plaintiff to have discovered the Defendant's violations. The Court stated the collection letter "may have put plaintiff on notice that the dispute process had failed to yield the correct outcome, but not on notice why that process had failed or which party was to blame." *Id.* By way of example, the Court noted "the violation leading to continued collection of the debt could have been committed by the CRAs in possibly relaying incorrect information to defendant that it simply confirmed." *Id.* The Court also agreed with Plaintiff's contention that the collection letter could have been evidence that the investigation had been ongoing, and that defendant had ceased efforts to collect the debt in response to plaintiff's dispute as part of Defendants efforts to comply with its FCRA duties. *Id.* The Court pointed out that the Ninth Circuit, in *Drew* "found that constructive discovery did not arise without knowledge as to how the ACDV process unfolded." *Id.* The Plaintiff in *Vasquez-Estrada* similarly claimed that "he was unaware of the details regarding the ACDV process between Defendant and the CRAs…" *Id.* Accordingly, the Court followed the *Drew* decision and held that Defendant had failed to satisfy its burden of conclusively showing that plaintiff "knew or should have known" of the deficiencies/violations by Defendant's predecessors-interest. *Id.*

The facts in the case at bar are clearly analagous to *Vasquez and Drew*. Like the Plaintiffs in those cases, the Plaintiff in the case at bar had no knowledge of what Experian communicated to Santander, or even if Experian had communicated the relevant information to Santander. *DKC at pp. 1-9.* Even if she assumed Experian had communicated the relevant information to Santander, she did not know what information was available to Santander, and no basis prior to this lawsuit to judge

whether the investigation was reasonable. Plaintiff had no way of knowing Santander had sent Santander's Inaccurate ACDV Response to Experian in August of 2014, and she certainly had no reason to believe the ACDV Response would address issues she did not raise in her dispute. *DKC at pp. 1-9.* She just knew something was wrong. *Id.* She had no way of knowing Santander had permanently closed the file in November of 2014. *Id.* She had no way of knowing Santander wrongfully considered itself absolved of any further responsibilities; even though it was routinely receiving a flurry of "carbon copy disputes" that should have caused it to question whether the Experian reporting was accurate. *Id.* If Santander had questioned the Experian reporting, as it was obligated to do pursuant to Section 1681s-2(a)(2), it would have quickly learned it had inaccurately sent Santander's Inaccurate ACDV Response to Experian on August 21, 2014. *See e.g. DMD at pp. 22-30.* Santander's response also caused confusion between Plaintiff and Experian. *DKC at pp. 1-9.* Plaintiff kept submitting disputes, not knowing that she was not disputing the most damaging information. *Id.* As a result, she continued to submit disputes to Experian; however, Experian would routinely reject the disputes as repeat disputes. *Id.* As a result, Experian communicated with Santander about few, if any, of the disputes that Plaintiff made to Experian from late 2014 until early 2017. *Id.* The confusion that Santander's response caused between Experian and Plaintiff only served to delay Plainitiff's discovery of Defendants' violation. *Id.* When Plaintiff filed this suit in early 2017, Santander jumped to its feet and corrected the reporting. *Id.* If it had been so quick to correct its clearly erroneous response to Experian's ACDV, Plaintiff would not have had to suffer the significant damages that she has suffered as a direct result of Santander's Inaccurate ACDV Response.

Despite the clear holdings in *Vasquez and Drew,* Defendant attempts to argue that Plaintiffs should know of their claims once the 30 day investigation period passes. In support of this argument, Defendant cites to *Grigoryan v. Experian Info. Solutions, Inc.*, 84 F. Supp. 3d 1044 (C.D. Ca. 2014) where the Court held that the statutue of limitations commenced as to the plaintiff's claim once the 30

day investigation period passed. However, the Court's holding was not based on any law that was contrary to the 9th Circuit's holding in *Drew*. The Court's holding was based on the simple fact that Plaintiff admitted that he discovered the violations by requesting and reviewing the credit reports. In fact, the *Grigoryan* court expressly followed *Drew; supra*. The Court acknowledged the ultimate burden regarding discovery of the claim was on the Defendants. *Id.* Fortunately, for the Defendants in that case, the Plaintiff admitted that he had discovered the violations. *Id.* The Plaintiff in this case has not made such an admission.

The Defendant also cites to *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092 (U.S.D.C Ariz. 2003). However, the holding in that case is not applicable here because the Defendants asserting the statute of limitations were credit reporting agencies; and the plaintiff's claims did not arise under Section 1681s-2(b). *Id.* The plaintiffs claims arose under Sections 1681e(b) and Section 1681i. *Id.* The Court was quick to point out that "the date on which liability arises depends on which provision was allegedly violated. *Id.* Since the plaintiff's claims did not arise under Section 1681s-2(b), the holding in *Acton* is not relevant to the case at bar.

After citing to its unpersuasive and irrelevant authority, Defendant makes an equally unpersuasive argument that Plaintiff fails to state a cause of action because the statute of limiations has run. In making this argument, generally states Plaintiff made a dispute in August of 2014. However, Defendant fails to recognize Plaintiff did not know Santander's Inaccurate ACDV Response addressed issues not raised as part of her dispute and she had no way of knowing this had happened. *DKC at pp. 1-9*. Defendant also  inaccurately states Defendant provided the relevant information back to Experian; and it fails to identify Santander's Inaccurate ACDV Response was sent on August 21, 2014. Instead, Defendants inaccurately states "Santander reported Plaintiffs account as closed to all credit reporting agencies on August 31, 2014." This statement is just flat out wrong. To the contrary, Santander's Inaccurate ACDV Response, sent on August 21, 2014; and the Deposition testimony of

Ms. Simmons clearly demonstrates Santander did not report the account as closed to Experian on August 31, 2014.

Defendant then contends "Plaintiff apparently redisputed the account to Experian." Defendant goes on to state "the only notice Experian sent to Santander was in November of 2014." Again, these statements are just flat-out wrong and are contradictory to evidence Santander produced in this case. *DMD Exhibit 8* clearly shows the notices Santander received in November of 2014 were not notices received from Experian. The notices Santander received after August 21, 2014 and until November 10, 2014 were "courtesy copy" notices generated by Equifax and Transunion. These notices would not have been required if Santander had not sent Santander's Inaccurate ACDV Response to Experian on August 21, 2014. Defendant then goes on to state the statute of limitations for Santander's alleged failure to investigate would begin to run when Plaintiff became aware of the incorrect reporting. However, Defendant does not identify when Plaintiff became aware of the incorrect reporting. Still, Defendant somehow concludes Plaintiff's claims were time-barred by January of 2017. Defendant's argument is non-sensical and is completely unsupported by the facts of this case.

Based on the foregoing, it is clear that: (1) Plaintiff's complaint satisfies the pleading requirements applicable to a FCRA claim; (2) by relying upon Exhibits to its motion, Defendant has converted this motion to a motion for summary judgment; and (3) Defendant has failed to demonstrate that there are no genuine issues of material fact and it is not entitled to judgment as a matter of law. Thus, Defendant's motion to dismiss Plaintiff's §1681s-2(b) must be denied.[10]

**IV. CONCLUSION**

---

[10]   Defendant argues Plaintiff has failed to state a cause of action for violation of §1681s-2(a). Plaintiff does not disagree with this argument. Plaintiff has never contended she can maintain a cause of action under this section.

Additionally, Plaintiff does not dispute Santander is entitled to summary judgment of Plaintiff's Chapt. 598 claim and her counsel had previously advised Santander's and Experian's counsel that Plaintiff was no longer pursuing this claim and her counsel intended to file a Notice of Voluntary Dismissal with Prejudice as to this claim.

For all the foregoing reasons, Plaintiff respectfully submits Defendant's motion must be denied.

DATED this 27th day of November, 2017

THE LAW OFFICE OF VERNON NELSON

By:  */s/ Vernon Nelson*
VERNON NELSON, ESQ.
Nevada Bar No.: 6434
9480 S. Eastern Avenue, Suite 252
Las Vegas, NV   89123
Tel:  702-476-2500
Fax:  702-476-2788
E-Mail:  vnelson@nelsonlawfirmlv.com
*Attorney for Kendra M. Carrington*

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that on the 27th day of November, 2017, I caused a true and accurate copy of the foregoing document entitled **PLAINTIFFS OPPOSITION TO DEFENDANT SANTANDER CONSUMER USA INC.'S MOTION TO DISMISS** to be served via CM/ECF E-FILE to the following;

J. Christopher Jorgensen, Esq.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy Ste 600
Las Vegas, NV 89169
Phone: 702-949-8200
E-mail: cjorgensen@lrrc.com
Attorneys for SANTANDER CONSUMER, U.S.A. INC

Jennifer L. Braster, Esq.
NAYLOR & BRASTER
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(T) (702) 420-7000
(F) (702) 420-7001
Email : jbraster@naylorandbrasterlaw.com
Attorneys for EXPERIAN INFORMATION SOLUTIONS, INC.

**Signed:** */s/ Danielle Alvarado*
**An employee of THE LAW OFFICE OF VERNON A. NELSON**